UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TOPE OGUNGEMI, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:22-cv-00649-SEB-MKK |
| ) | |
| OMNICARE, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiffs, each allegedly a former delivery driver, brought this action against their employers, Defendants Omnicare, Inc., Priority Dispatch, Inc., and Subcontracting Concepts, LLC, for violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.*, and Indiana Code section 22-2-1, *et seq*. Now pending before the Court are four motions: (1) Defendant Subcontracting Concepts, LLC's Motion to Dismiss Plaintiffs' Fifth Amended Complaint, dkt. 128; (2) Defendant Priority Dispatch, Inc.'s Motion to Dismiss the Six Remaining, Non-Arbitration Plaintiffs, dkt. 130; (3) Defendant Omnicare, Inc.'s Motion to Dismiss Plaintiffs' Fifth Amended Complaint, dkt. 132; and (4) Plaintiffs' Motion for Relief from Judgment, dkt. 139. For the reasons explained below, Defendants' Motions to Dismiss are **GRANTED**, and Plaintiffs' Motion for Relief from Judgment is **DENIED**.

## FACTUAL & PROCEDURAL BACKGROUND

Since this litigation first arose on our docket on March 31, 2022, Plaintiffs' allegations have undergone six iterations, bringing us now to their Fifth Amended Complaint

1

(the "5AC"), dkt. 125. On June 21, 2023, the Court entered its Order on Pending Motions (the "Order"), dkt. 122, wherein we detailed the "labyrinthine procedural history" that has greatly complicated this litigation as well as its underlying factual background: We restate those facts insofar as they are necessary to resolve the instant motions and supplement with those facts newly highlighted by the parties.

On August 26, 2022—while two motions for leave to file amended complaints remained pending our decisions—Plaintiffs filed a motion for leave to withdraw their Third Amended Complaint along with a request to file a Fourth Amended Complaint (the "4AC"). The 4AC's stated purpose was to remove references to a since-dropped Defendant, NOW Courier, Inc., to add Subcontracting Concepts as a Defendant, to remove time-barred Plaintiffs, and to add additional Plaintiffs. While abandoning its attempt to have this action certified as an opt in or class action lawsuit, the 4AC included forty Plaintiffs, ten of whom explicitly conceded that their claims are barred by the statute of limitations. On September 21, 2022, the Court nonetheless authorized Plaintiffs to file the 4AC.

Over the ensuing months, the parties briefed numerous motions, including motions to dismiss the 4AC and compel arbitration. They also conferred with Magistrate Judges in four separate status conferences: on September 22, 2022, dkt. 73, November 21, 2022, dkt. 98, February 16, 2023, dkt. 115, and June 21, 2023, dkt. 123.

Following a February 16, 2023, status conference with the Magistrate Judge, the parties were directed to file a joint stipulation of dismissal as to any and all plaintiffs lacking a viable claim, and, insofar as the parties disagreed regarding those putative plaintiffs, they were to file a joint notice informing the Court of such. On March 3, 2023, Plaintiffs

filed a notice (albeit unilaterally) stating that the parties had been unable to agree as to ten "time-barred Plaintiffs" but that they nonetheless would stipulate to the dismissal with prejudice of eight of these Plaintiffs. No explanation was provided to us for the exclusion of two individuals, Olanrewaju Oladapo ("Oladapo")[1] and Anthony Akinade a/k/a Semui Akinade Owoade ("Akinade"), who also had unambiguously conceded that their claims were time-barred. 4AC ¶ 5, dkt. 71 ("Olanrewaju Oladapo worked until March 2016 and must be dismissed."); *id.* ¶ 26 ("Anthony Akinade a/k/a Semui Akinade Owoade worked until December 23, 2017[,] and must be dismissed.").

In our Order on June 21, 2023, we compelled twenty-three Plaintiffs to arbitrations with each Defendant, compelled one Plaintiff to arbitrate with Subcontracting Concepts, dismissed ten time-barred Plaintiffs (including Oladapo and Akinade), and dismissed without prejudice the six remaining Plaintiffs[2] for failure to comply with Federal Rules of Civil Procedure 8 and 12(b)(6).

Though the parties had stipulated to the dismissal of only eight time-barred Plaintiffs, we ruled that, according to the 4AC, Oladapo and Akinade were also time-barred. With justifiable frustration, we described Plaintiffs' counsel's "refusal to stipulate to the dismissal of all ten" time-barred Plaintiffs as "inexplicabl[e]." Order 30, dkt. 122. "[I]n the absence of any argument or response from Plaintiffs' counsel" (despite multiple

---

[1] Plaintiffs say that Olanrewaju Oladapo's name may actually be Oladapo Olanrewaju. For sake of consistency, we refer to this Plaintiff as Oladapo.
[2] These six Plaintiffs are: (1) Oluwaseun Ijimakinde, (2) Israel Ogundare, (3) Abayomi Falaye, (4) Olasunkanmi Olotu, (5) Hammed Ayorinde, and (6) Israel Olusola. We refer to them collectively as the "Six Plaintiffs."

3

opportunities to do so), we accordingly dismissed Oladapo and Akinade, "based on their respective admissions that they are barred by the statute of limitations." *Id.*

As for the Six Plaintiffs dismissed without prejudice, we explained that the generalized allegations regarding Defendants' misconduct—without any specific allegations detailing each Defendant's respective role or responsibility—made the object of Plaintiffs' various claims entirely undeterminable. In dismissing their claims, we provided "one additional opportunity to fashion an amended complaint . . . that must specify *which* Plaintiff worked for *which* Defendants and set forth each allegedly wrongful action attributable to each individual Defendant." *Id.* at 33. In granting this final opportunity to craft an intelligible complaint, we allowed thirty days "within which to seek leave to amend their complaint to conform" to our ruling. *Id.* at 36.

On July 21, 2023, Plaintiffs filed their 5AC without seeking leave of the court. Much like the 4AC, the 5AC avers in summary as follows: Omnicare owns and operates various pharmacies throughout the United States, selling and delivering prescription medications and medical devices directly to its customers, such as nursing homes, medical facilities, and residential homes. Omnicare conducts a competitive bidding process to engage drivers to perform delivery services in various regions across the country, including Indiana, where it operates multiple distribution centers. As part of its bidding process, Omnicare specifies the regional delivery routes for which it seeks coverage and selects the lowest bidder who is awarded all the delivery work for a particular state or region. For Indiana, Omnicare chose Subcontracting Concepts and Priority Dispatch to deliver its products throughout the state.

Subcontracting Concepts and Priority Dispatch then hire the drivers to deliver Omnicare's products. Using their own personal vehicles, drivers conduct regularly scheduled deliveries according to Omnicare's specified routes, after which the drivers return to their assigned distribution centers to turn in Omnicare's boxes, bags, totes, and paperwork. Defendants compensate drivers based on a predetermined flat rate assigned to each route, which compensation, Plaintiffs aver, "result[s] in sub-minimum wage" payments. 5AC ¶ 48, dkt. 125. Drivers are also required to make "stat runs," which are individual deliveries from Omnicare facilities to designated customers "on an expedited, emergency, and ad hoc basis." *Id.* ¶ 49. Though these drivers "nominally work[ ]" for Subcontracting Concepts and Priority Dispatch, they "make deliveries on behalf of Omnicare from Omnicare facilities to Omnicare customers when and where Omnicare directs them to do so and in the manner Omnicare requires." *Id.* ¶ 44.

Plaintiffs maintain that Subcontracting Concepts, Priority Dispatch, and Omnicare are their joint employers, as evidenced by the following: Defendants require their drivers to follow specific delivery routes at assigned times. Defendants maintain and control the electronic report procedures for drivers to record deliveries at each stop, along with the required paperwork. Defendants issue a daily work schedule to each driver, including the routes they are to follow. Drivers are not permitted to decline these assignments or any stat runs assigned to them. Defendants require drivers to sign non-compete agreements, prohibiting them from employment with a competitor. Defendants require each driver to submit a United States Citizenship and Immigration Services Form I-9 to verify their identity

and employment authorization, noting that this form is mandatory for employees only, not for independent contractors.

As Defendants' employees, according to Plaintiffs, they are not exempt from the overtime or minimum wage requirements set forth in Indiana Code section 22-2-2-3, *et seq.*, or the FLSA, 29 U.S.C. § 201, *et seq.* Plaintiffs also aver that when their flat fee rates are calculated on an hourly basis, they are being paid at a rate that is less than minimum wage. Regarding stat runs, Plaintiffs allege that Defendants typically pay drivers approximately 70 cents per mile each way, though some short stat runs generate flat fees, but often they are compensated amounts that are less than reflective of the actual number of miles driven. Plaintiffs maintain that they routinely work in excess of forty hours per week, sometimes as many as 100 to 120 hours a week, but receive no overtime pay. They also allege that they are not reimbursed for any costs associated with their use of their personal vehicles in making deliveries on behalf of Defendants. "This underpayment," Plaintiffs allege, "is further compounded by Defendants' unlawful deductions from Drivers' wages, including but not limited to deductions for payroll processing fees and data transfer fees." 5AC ¶ 59, dkt. 125. Drivers are also charged for expenses incurred solely for the benefit of Defendants, such as uniforms and employment screening fees. According to Plaintiffs, Defendants in addition fail to withhold income taxes, payroll taxes, and other required payments for Plaintiffs' benefit.

On August 4, 2023, Defendants Subcontracting Concepts, Priority Dispatch, and Omnicare each moved to dismiss Plaintiffs' 5AC, arguing (in relevant part) that it fails to

comply with the Court's prior instructions, as imposed by our Order, thereby meriting dismissal with prejudice of the claims by the Six Plaintiffs.

On August 30, 2023, while briefing the dismissal motions was underway, Plaintiffs moved for relief from judgment, pursuant to Federal Rule of Civil Procedure 60(b)(1). In that motion, we learned that Oladapo and Akinade had "inadvertently agreed to this dismissal of their claims, something that they did not intend to do," thus requiring the reinstatement of their claims. Pls.' Relief Mot. 1, dkt. 139.

Defendants' Motions to Dismiss and Plaintiffs' Motion for Relief from Judgment are also now fully briefed and ripe for ruling. We address them *seriatim*.

## DISCUSSION

### I.     MOTIONS TO DISMISS

Omnicare, Priority Dispatch, and Subcontracting Concepts have each moved the Court to dismiss the 5AC claims against them.[3] For clarity and convenience, we shall consider these motions together.

To survive a motion to dismiss under Rule 12(b)(6), the complaint must sufficiently aver factual information that plausibly states a claim to relief above the speculative level. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). Courts

---

[3] As previously mentioned, Plaintiffs filed the 5AC without first seeking leave to amend, thereby prompting Defendants to file motions to dismiss in lieu of motions to deny leave to amend. Defendants note that, whatever the motion, the applicable legal standards are functionally identical: Courts may deny leave to amend when there have been repeated failures to cure deficiencies or when the proposed amendments are futile, meaning that they could not survive a motion to dismiss. *Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1052–53 (7th Cir. 2019). While Defendants contend that Plaintiffs' procedural misstep (i.e., failing to seek leave to amend) is alone sufficient for dismissal, they ask us to assess the 5AC's legal sufficiency under the motion to dismiss standard that would otherwise apply; and that we shall do.

accept the plaintiff's well-pleaded factual allegations as true and draw all permissible inferences in the plaintiff's favor. Though a plaintiff need not plead detailed factual allegations, she must provide more than mere labels, conclusions, or formulaic recitations to surpass the Rule 8 threshold. *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016).

In our dismissal of the Six Plaintiffs' allegations in the 4AC, we determined that Plaintiffs had "improperly set out a theory of collective responsibility" by "omitting the specific details as to which Plaintiff incurred a particular harm based on a specific defendant's wrongful action." Order 32, dkt. 122. We concluded that Plaintiffs' generalized allegations failed to comply with the Federal Rules of Civil Procedure's notice pleading requirements. *Id.* at 33. We permitted "one additional opportunity to fashion an amended complaint, if possible, that conform[ed] to the rulings." *Id.* Our instructions were explicit: "Any amended complaint must specify *which* Plaintiff worked for *which* Defendants and set forth each allegedly wrongful action attributable to each individual Defendant." *Id.*

At bottom, Plaintiffs' burden is to aver sufficient facts plausibly suggesting that each alleged employer exercised some control over the working conditions of each Plaintiff. *Moldenhauer v. Tazewell-Peken Consol. Commc'ns Ctr.*, 536 F.3d 640, 643 (7th Cir. 2008) (applying FLSA to determine whether joint employment existed). But vague allegations, unaccompanied by basic facts regarding the employment, cannot surmount this threshold. *Ivery v. RMH Franchise Corp.*, 280 F.Supp.3d 1121, 1129 (N.D. Ill. 2017); *Boyce v. SSP Am. MDW, LLC*, No. 19 C 2157, 2019 WL 3554153, at *4 (N.D. Ill. July 31, 2019). We reiterate: "[e]ach defendant is entitled to know what [it] did that is asserted to be wrongful.

8

A complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

Despite our admonition, the 5AC returns materially unchanged from its prior form. Indeed, the *only* revisions include:

- Deleting the second paragraph of the 4AC, which read: "The purpose of this Fourth Amended Complaint is to remove some Plaintiffs who are barred by the statute of limitations, to add additional Plaintiffs and to add Subcontracting Concepts LLC. Plaintiffs no longer seek certify [sic] this action as an opt in or class action lawsuit. Plaintiffs do, however, assert additional claims for retaliation under the Fair labor [sic] Standards Act." 4AC ¶ 2, dkt. 71.

- Removing references to ten time-barred Plaintiffs that we previously had dismissed with prejudice. *See id.* ¶¶ 5, 7, 13, 15–16, 19, 26–27, 35–36.

- Adding: "Pursuant to this Court's Order of June 21, 2023, this matter is stayed as to all Plaintiffs except the following: (1) Oluwaseun Ijimakinde, (2) Israel Ogundare, (3) Abayomi Falaye, (4) Olasunkanmi Olotu, (5) Hammed Ayorinde, and (6) Israel Olusola. Those Plaintiffs worked for Defendants on or after March 31, 2019, and did not sign an arbitration agreement. Therefore, those six Plaintiffs' claims should proceed in this Court." 5AC ¶ 2, dkt. 125.

- Adding "and did not sign an arbitration agreement" to each paragraph introducing the six remaining Plaintiffs. *Id.* ¶¶ 11, 16, 19, 25, 29–30.

None of these changes reflects any meaningful effort to comply with our explicit instructions to aver in clear fact-based form the specific allegations against each Defendant capable of providing it with fair notice of the legal claims against it.

The 5AC again recites in identical form the allegations of an employer-employee relationship, stating broadly and generally that: Defendants require drivers to follow specific routes to deliver products and specify the exact time to drive those routes; Defendants control the method used to electronically report deliveries at each stop and mandate compliance of that method; Defendants do not permit drivers to negotiate their service fees; Defendants generate and schedule drivers' daily routes and do not permit drivers to reject those assignments; Defendants require drivers to sign a non-compete agreement; and Defendants require drivers to verify employment eligibility by filling out a Form I-9.

The 5AC is devoid of any factual allegations distinguishing one Defendant from another. As such, the proposed complaint does not provide Defendants with the requisite notice as required by federal pleading standards, nor does it state a claim upon which relief can be granted.

More specifically, the 5AC omits plainly relevant details regarding which Defendant hired them, paid them, or directly supervised their work. Despite alleging that Omnicare "directs, controls, and supervises the way that Drivers perform their work," the 5AC avers no supporting facts as to how Omnicare—as distinguished from Priority Dispatch and Subcontracting Concepts—specifically exercised such control. Therefore, the overarching deficiency in Plaintiffs' prior pleading remains: In failing to refine their generalized allegations, Plaintiffs have not provided sufficient facts to support each alleged employer's

control over the working conditions of any or all of them. Consequently, the 5AC once again fails to provide Defendants with the requisite notice required by well-established federal pleading standards, nor does the 5AC state a claim upon which relief could be granted.

Plaintiffs offer no rebuttal to these challenges by Defendants, contending instead that their pleading of "collective liability" was in fact purposeful "so as not to waive a claim against any of the three Defendants." Pls.' Resp. 6, dkt. 147. Plaintiffs attempt to hide behind their recalcitrance, explaining that they "are not native to the United States, and there is a significant language barrier." *Id.* Due to their unfamiliarity with this country's legal system, Plaintiffs have not maintained "meticulous records." *Id.* We know their lawyer not to be so unfamiliar, as a long-standing member of the bar of this court. Whatever the challenges one may face in attempting to navigate a foreign legal landscape, "[w]e assume that lawyers here are equipped to deal with language barriers; we also assume they are familiar with the law." *Osagiede v. United States*, 543 F.3d 399, 403 (7th Cir. 2008).

Given the more than eighteen months during which this matter has pended on the Court's docket, Plaintiffs' counsel has had more than ample time and opportunity to conform his practices to the applicable legal standards and this Court's directives. Even if communications with counsel have been difficult, Plaintiffs do not represent that the basic information omitted from the 5AC is either beyond their understanding or unavailable to them. *See Ivery*, 280 F.Supp.3d at 1129. We note that, in some instances, the 5AC is quite specific, detailing the approximate dates of Plaintiffs' employment and weekly hours, 5AC ¶¶ 11, 16, 19, 25, 29, 30, 51, 73, dkt. 125; the types of deductions allegedly taken from

their compensation, *id.* ¶¶ 59–60; and the specific methods by which they were compensated, *id.* ¶ 48 (flat rate for routes), *id.* ¶ 49 (70 cents per mile for stat deliveries). This specificity puts the lie to Plaintiffs' argument that their language barrier posed an insurmountable obstacle to their identifying "*which* Plaintiff worked for *which* Defendants" and their ability to attribute the allegedly improper conduct to any individual Defendant.

We have previously forewarned Plaintiffs that deficient allegations in their complaint would result in its dismissal. As observed by other federal courts, "there is no room for 'game-playing omissions of plainly relevant detail,' " especially where, as here, Plaintiffs have been more than indulged in their efforts to frame an acceptable pleading, this being their *sixth* complaint. *Ivery*, 280 F.Supp.3d at 1129 (quoting *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 10 & n.10 (1st Cir. 2012)).[4]

Regrettably, Plaintiffs, again, have failed to plead with specificity the underlying facts revealing as to each alleged Defendant its particular role or involvement here. They have not plausibly alleged the manner or extent of any individual Defendant's actions that qualify it as a joint employer. Given that the 5AC remains largely unchanged from the allegations we have already held deficient, it can be no surprise that we must again conclude that Plaintiffs have again failed to satisfy the notice pleading standards. An undifferentiated allegation as to "Defendants" collectively in terms of their actions in creating

---

[4] Insofar as Plaintiffs individually have been prejudiced by their counsel's advocacy, those consequences cannot be fairly shifted to and shouldered by the district court and the defendants. *Easley v. Kirmsee*, 382 F.3d 693, 700 n.6 (7th Cir. 2004); *e.g.*, *Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753, 754 (7th Cir. 2015) ("When lawyers fail, the remedy is malpractice litigation against the wrongdoer, not more litigation against an innocent adversary in the original litigation.").

certain working conditions does not cut it, as we have previously explained. Thus, Plaintiffs' 5AC fails to state a claim upon which relief can be granted, and the claims of the remaining Six Plaintiffs must and will be dismissed with prejudice.

## II.   MOTION FOR RELIEF FROM JUDGMENT

On August 30, 2023, Plaintiffs Anthony Akinade and Olanrewaju Oladapo moved for relief from judgment under Rule 60(b), on the grounds that they inadvertently agreed to dismiss their claims. They request that we reinstate their claims in this case.

Plaintiffs brought their motion pursuant to Rule 60(b), whereby "district courts 'may relieve a party or its legal representative from a *final* judgment, order, or proceeding' for the enumerated reasons." *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015) (quoting Fed. R. Civ. P. 60(b)) (emphasis in original). Rule 60(b), by its terms, is "limited to 'final' judgments or orders." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571 (7th Cir. 2006) (citations omitted). Ordinarily, "simple dismissal of a complaint does not terminate the litigation" for purposes of post-judgment motions. *Abcarian v. McDonald*, 617 F.3d 931, 943 (7th Cir. 2010) (citations omitted). Because no entry of final judgment followed our June 2023 Order, dkt. 122, Plaintiffs' motion is not reviewable under Rule 60(b).

Thus, we construe Plaintiffs' request as a motion to reconsider pursuant to Rule 54(b), which provides that any order adjudicating "fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). In other words, Rule 54(b)—not Rule 60(b)—"governs non-final orders" and permits courts to revisit prior rulings before entry of final judgment. *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012).

13

However, the law of the case doctrine constrains the application of Rule 54(b), limiting it "to correct manifest errors of law or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (internal quotation and citation omitted); *see also Santamarina*, 466 F.3d at 572 (explaining that reconsideration is appropriate where court finds "a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous"). "A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269–70 (7th Cir. 1996)); *e.g.*, *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F.Supp. 656, 665 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984).

Here, Plaintiffs have not demonstrated an entitlement to relief under Rule 54(b) because their supporting evidence for the motion was in their possession while the motions to dismiss the 4AC were still pending. In the 4AC, Plaintiffs Oladapo and Akinade expressly and unequivocally consented to the dismissal imposed by our June 2023 Order. Indeed, their specific averments stated that Oladapo "worked until March 2016 and must be dismissed" and that Akinade "worked until December 23, 2017[,] and must be dismissed." 4AC ¶¶ 5, 26, dkt. 71.

In their motion for relief, Plaintiffs incorporated email exchanges with Defendants' counsel from October 2022 and March 2023 that reveal Plaintiffs' counsel's awareness that Oladapo and Akinde were potentially within the limitations period. In opposing the instant motion, Defendants attached additional e-mail correspondence revealing that Plaintiffs'

14

counsel had known of the potential viability of Oladapo's and Akinade's claims since August 12, 2022—*before* the 4AC was ever filed, *see* dkt. 59—and October 11, 2022, respectively. *See generally* dkt. 143-1, 143-2, 143-3. In other words, Plaintiffs' counsel was in possession of this evidence no less than eight months prior to the dismissal of Oladapo's and Akinade's claims in our June 2023 Order.

Despite the availability of this claim-salvaging information, Plaintiffs' counsel took no action until after the fact. By then, motions to dismiss had been briefed and status conferences conducted—all without any mention of Oladapo's and Akinade's potentially viable claims. Even following the dismissals of Oladapo and Akinade in June 2023, Plaintiffs' counsel waited two months to file the motion.

Thus, we cannot agree with Plaintiffs' counsel's description that Oladapo's and Akinade's dismissal was "inadvertent." Their dismissal was, according to the explicit terms of the 4AC, unambiguous and unequivocal. Due diligence, properly exercised, would have prompted Plaintiffs' counsel to present any contrary information to the Court long before he did. Having demonstrated no manifest error of law nor any newly discovered evidence, Plaintiffs' Motion for Relief from Judgment must be denied.

It seems warranted here to add this final admonition: our orders "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *A&C Constr. & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020). Plaintiffs have had multiple opportunities and ample time to advance properly framed claims, and still they have failed to do so. Accordingly, Plaintiffs "must live with th[eir] decision." *Id.*

## CONCLUSION

For the reasons explicated above, Subcontracting Concepts's Motion to Dismiss, dkt. 128, Priority Dispatch's Motion to Dismiss, dkt. 130, and Omnicare's Motion to Dismiss, dkt. 132, are all **GRANTED**. The claims of Plaintiffs Oluwaseun Ijimakinde, Israel Ogundare, Abayomi Falaye, Olasunkanmi Olotu, Hammed Ayorinde, and Israel Olusola are hereby **DISMISSED** with prejudice, for failure to state a claim.

Plaintiffs' Motion for Relief from Judgment, dkt. 139, is also **DENIED**.

**IT IS SO ORDERED.**

Date: 1/24/2024

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Angela S. Cash
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
acash@scopelitis.com

Christopher J. DeGroff
SEYFARTH SHAW LLP
cdegroff@seyfarth.com

Christopher J. Eckhart
Scopelitis, Garvin, Light, Hanson & Feary
ceckhart@scopelitis.com

Andrew James Ireland
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
aireland@scopelitis.com

Andrew Michael McKinley
Seyfarth Shaw
amckinley@seyfarth.com

Neal Shah
Frost Brown Todd LLC
nshah@fbtlaw.com

James Joseph Swartz, Jr
Seyfarth Shaw LLP
jswartz@seyfarth.com

Russell Jay Taylor, Jr
Scopelitis Garvin Light Hanson & Feary, P.C.
jtaylor@scopelitis.com

Mark R. Waterfill
ATTORNEY AT LAW
mark@waterfilllaw.com

Amy Suzanne Wilson
Frost Brown Todd LLC
awilson@fbtlaw.com